LILES, Judge.
V. S. was keeping company with appellee and another man. She alleged that she regularly had intercourse with appellee up until the time she became pregnant. She apparently concluded that the other man was the father and she married him. Following the birth of the child one of the parties to the marriage became suspicious and a divorce was granted to appellant and her husband. The divorce decree relieved the husband of all duty to support the child. Appellant, now being a single woman, brought bastardy proceedings against appellee, pursuant to F.S. § 742.011, F.S.A., which provides:
“Any unmarried woman who shall be pregnant or delivered of a bastard child, may bring proceedings in the circuit court, in chancery, to determine the paternity of such child.”
In the divorce proceedings there were blood grouping tests performed. Neither the results nor the divorce proceedings themselves are before this court, the trial judge having sealed the file.
Appellee maintains that appellant is not entitled to bring these proceedings since she is precluded from repudiating the legitimacy of a child born during wedlock. Appellee cites several cases, none of which construes this particular statute, and all support the well-founded principle of law that legitimacy is presumed if the child is born or conceived while the mother is married. It is one of the strongest rebuttable presumptions known to law. This, of course, is true; however, that presumption was apparently overcome in the suit between appellant and her former husband. Otherwise, the trial judge would not have relieved the husband of the duty to support the child.
Our first inclination was to follow the trial judge’s first order when he denied the motion to dismiss.. He later, of course, granted a rehearing and granted the motion to dismiss. It is that order appealed from.
It seems rather heartless and incongruous that the law will not afford the child of this affair protection. It is the child who is the victim of whatever indiscretion might have been exhibited by the mother’s husband and the child’s father and mother.
The court said in Clarke v. Blackburn, 151 So.2d 325 (2d D.C.A.Fla.1963) that common law casts no liability upon the father to support his illegitimate child and it could only be imposed by statute. The statute in Florida which changed the common law was F.S. § 742.031, F.S.A.
The terms illegitimate child and bastard are synonymous, and our court in Smith v. Wise, 234 So.2d 145, defines “bastard” and “legitimate child,” and as authority quotes Kowalski v. Wojtkowski, 19 N.J. 247, 116 A.2d 6, 53 A.L.R.2d 556:
“ ‘And it matters not that the marital bond was severed before the children were born. A legitimate child “is he that is born in lawful wedlock, or within a competent time afterwards.” 1 Black. Comm. 446. The rule has its genesis in the maxim of the civil law, pater est quem nuptiac domonstrant (the nuptials show who is the father). “A bastard, by our English laws, is one that is not only begotten, but born, out of lawful matrimony.” Ibid. 455. At common law a legitimate child is one “either born or begotten in wedlock;” e converso, an ille *589 gitimate child is one “neither begotten nor born in lawful wedlock.” Long, The Law of Domestic Relations (3rd ed.) sections 251, 277.’” (116 A.2d at 14)
The Legislature in adopting the No Fault divorce laws, effective July 1, 1971, enacted the following paragraph:
“(4) A judgment of dissolution of marriage shall result in each spouse having the status of being single and unmarried. No judgment of dissolution of marriage renders the children of such marriage illegitimate.” (Emphasis added.)
It could be argued that this child was not of “the children of such marriage.” But the divorce proceedings mentioned above are not before us and while we may presume that appellant’s former husband overcame the presumption of legitimacy for purposes of avoiding paying support, we cannot because of the strength of the presumption assume the child was not a child of such marriage. By virtue of prior case law the mother is not allowed before us or the trial court to enable us to draw any such assumption. See, also, Kennelly v. Davis, 216 So.2d 795 (3d D.C.A.Fla.1968); Sacks v. Sacks, 254 So.2d 572 (3d D.C.A.Fla.1971); Lorenz v. Jiminez, 163 So.2d 500 (3d D.C.A.Fla.1964).
The appellant relies on B. S. B. v. B. S. F., 217 So.2d 599 (2d D.C.A.Fla.1969), but that case, on a close examination, is clearly not in point. There is a vast difference in the law between annulment and divorce. There the child was conceived out of wedlock and legally born out of wedlock following the annulment. Here the child was conceived out of wedlock but born in wedlock. Had there been an annulment instead of dissolution the mother would have been entitled to bring a paternity suit.
The irony of all of this is that the child will ultimately suffer the consequences, and we have contrived, as did the trial judge, to bring about a different result. We finally conclude, however, that the problem must be addressed to the Legislature, it being conceived our duty to construe the law and not to make it. The Legislature as parens patriae has concluded that the child would prefer poverty to bastardy and if the welfare agencies can keep him alive long enough maybe we will find out for certain.
We therefore affirm.
MANN, C. J., and HOBSON, J„ concur.