556 So.2d 1150 (1990)
Francisco VIDAL, Appellant,
v.
Daisy RIVAS, Appellee.
Nos. 88-717, 88-427.
District Court of Appeal of Florida, Third District.
January 16, 1990.
Rehearing Denied March 13, 1990.
Arthur B. Stark, Miami, for appellant.
Leonard H. Rubin, Miami, for appellee.
Before BARKDULL, HUBBART and COPE, JJ.
PER CURIAM.
Vidal appeals a final judgment adjudicating paternity and awarding child support to Rivas. The final judgment determining paternity reads in part as follows:
"1. From all of the evidence and testimony in the case, and even without regard to the HLA test results, the Court finds that Respondent, Francisco Vidal is the father of the minor child, Franco Xavier Vidal.
2. Based upon the needs of the child, Francisco Xavier Vidal, and based upon the Financial Affidavit of Francisco Vidal, filed in this cause and certifying that he is able to pay any reasonable award ordered by this Court for child support and attorney's fees, and based upon the very limited ability of Petitioner, Daisy Rivas to financially assist in the support of the minor child, this Court finds that the sum of $1500.00 per month is reasonable and shall be paid by Respondent, Francisco Vidal to Petitioner, Daisy Rivas each month commencing December 1, 1987 and $1500.00 on the first day of each consecutive month thereafter until the minor child, Franco Xavier Vidal, reaches his eighteenth birthdate on November 5, 1991. All such payments shall be made through the Court Depository, and any fee of the Clerk of the Circuit Court for Dade County shall be additionally paid by Respondent.
3. The Court finds that the reasonable needs of the minor child existed at and before the filing of the Complaint to Determine *1151 Paternity of Child, which was filed on August 11, 1986 and therefore Respondent is ordered to pay the sum of $1500.00 per month directly to Petitioner for the period August 11, 1986 through November 30, 1987 for the total amount of $23,550.00 which Respondent may pay in two equal installments of $11,775.00 each, the first installment being payable by him to Petitioner by February 1, 1988 and the balance of $11,775.00 to be paid by him to Petitioner by April 1, 1988.
* * * * * *
6. Based upon Respondent not being a U.S. Citizen and he traveling outside of the U.S. with some frequency, and based upon his past history of only sporadic payments of child support, it is now ordered that he shall post a surety or cash bond in the amount of $25,000.00 with the Clerk of this Court as security for child support payments, which shall be done by December 10, 1987.
7. The parties are hereby mutually enjoined from harassing, annoying, threatening or assaulting each other.
.....
Appellant urges error in:
(I) The denial of his right to have an additional blood test,[1] pursuant to section 742.12, Florida Statutes (1986) and the admission of the HLA test into evidence without proper foundation, (II) the requirement that he post a $25,000 bond as security for the support payments, and (III) the award of fifteen-hundred dollars per month as child support which was unreasonable and excessive and should not have been retroactive.
The appellee has filed a cross-appeal contending that the trial court erred in limiting the amount of attorney's fees to be paid by Vidal.
This appeal requires a construction of Section 742.12, Florida Statutes,[2] and particularly, a determination of what is a "reasonable" request for a retest and the effect of the use of the word "shall" in this subsection. "Shall" as used in a statute has been construed to be either mandatory or directory in its effect. State v. Thomas, 528 So.2d 1274 (Fla. 3d DCA 1988); See Tibbals Flooring Company v. Marcum, 218 Tenn. 509, 404 S.W.2d 498 (1966); Compare Smith v. James Pirtle Construction Co., 405 So.2d 290 (Fla. 1st DCA 1981). "Shall" as used in the statute in question must be considered as being directory, because to construe it as mandatory would render meaningless the words immediately proceeding it, to wit: "reasonable request." "Request" by its very definition indicates that it is not a mandatory command, but what is requested is addressed to the discretion of the recipient. We construe the use of "shall" in the statute as directory and next look to determine if the trial judge acted reasonably under all the circumstances, or to state it differently, *1152 whether the trial judge abused his discretion in denying an additional test. Viewing the trial judge's action in light of the record then before him[3] we find no abuse of discretion[4] in denying the additional test. Reviewing the record as a whole, after the final hearing, any error would be harmless,[5] because, as the trial judge noted in his final order, the ruling of paternity would have been the same without the test. We also find no error in the admission of the results of the test against the objection that no proper foundation was laid in light of the stipulation made by counsel for the appellee; however, even if the admission was error, at most it would also be harmless. Section 59.041, Florida Statutes (1987).
As to the amount of child support and security thereof, the appellant has failed to demonstrate abuse of discretion in the trial court's rulings and therefore they will not be disturbed. Section 742.08, Florida Statutes (1985). Section 742.031, Florida Statutes (1985); Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983); Conner v. Conner, 439 So.2d 887 (Fla. 1983); Weiner v. Weiner, 403 So.2d 408 (Fla. 1981); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Feldman v. Feldman, 324 So.2d 117 (Fla. 3d DCA 1975).
We find no merit in the cross appeal urging that the trial court should not have reduced the amount of fees earned by the counsel for the appellee. Although the record demonstrates that counsel for the appellee expended more time than that allowed by the trial court, not all of the services that were rendered were in furtherance of the paternity action, but were due to other activities of the appellee not related to advancing the paternity complaint. Therefore the putative father was not liable for these services. Wherefore for the above reasons the final judgment of paternity under review, be and the same is hereby affirmed in all respects.
Affirmed.
COPE, Judge (concurring in part and dissenting in part).
I concur with the majority that any error in the case was harmless because of the overwhelming evidence of paternity.
I cannot agree, however, with the majority's interpretation of section 742.12(2), Florida Statutes (1987). Given the probability levels associated with the test, see id. § 742.12(1), the HLA test results will inevitably be given very great weight by the trier of fact and will in many instances be the dispositive factor supporting a determination of paternity.
That being so, the legislature intended that litigants have, as a matter of right, the opportunity for a retest either at "the same laboratory or an independent laboratory at the expense of the party requesting additional testing." Id. § 742.12(2). The "upon reasonable request" limitation was simply intended to relate to the time, place, and manner of the retesting. Thus, the request for retesting must be made in a timely fashion, and cannot be an eleventh hour request interposed to delay the litigation. Likewise, if there were some bona fide objection with respect to the laboratory proposed for the retesting, the court could deny permission on the ground that it is not a "reasonable request." The court has discretion to determine whether the *1153 request is reasonable, but once the court finds the request is reasonable, it must authorize the additional testing.
The reason that the court must be involved in the retesting process is, of course, because a sample must be taken from the mother, the child, and the putative father. Id. § 742.12(1). Thus, absent consent by all three persons, a court order is needed in order to compel the drawing of the necessary blood samples.
For the reasons stated, the word "shall" was chosen intentionally by the legislature, and should be interpreted in accordance with its ordinary and usual meaning. Holloway v. State, 342 So.2d 966, 968 (Fla. 1977); Bystrom v. Florida Rock Indus., Inc., 502 So.2d 35, 37 (Fla. 3d DCA), review denied, 511 So.2d 297 (Fla. 1987). Until such time as scientific testing is shown to be infallible, litigants proceeding under section 742.12 are entitled, as a matter of right, to a second expert opinion. I would therefore hold that the trial court erred by not authorizing the second test, but that the error was harmless in this case.
NOTES
[1] The test results were 95.72% positive which created a rebuttable presumption that Vidal was the biological father of Franco Xavier Vidal.
[2] Section 742.12, Florida Statutes ("Scientific testing to determine paternity") reads in part as follows:

"(1) In any proceeding to establish paternity in law or in equity, the court on its own motion or upon request of a party may require the child, mother, and alleged fathers to submit to Human Leukocyte Antigen tests or other scientific tests that are generally acceptable within the scientific community to show a probability of paternity... . The results of the Human Leukocyte Antigen tests or other scientific tests, together with the opinions and conclusions of the test laboratory, shall be filed with the court. Test results are admissible in evidence and should be weighed along with other evidence of the paternity of the alleged father unless the statistical probability of paternity equals or exceeds 95 percent. A statistical probability of paternity of 95 percent or more creates a rebuttable presumption, as defined by s. 90.304, that the alleged father is the biological father of the child. If a party fails to rebut the presumption of paternity which arose from the statistical probability of paternity of 95 percent or more, the court may enter a summary judgment of paternity. If the test results show the alleged father cannot be the biological father the case shall be dismissed with prejudice.
(2) If the test results or the expert analysis of the inherited characteristics is disputed, the court, upon reasonable request of a party, shall order that an additional test be made by the same laboratory or an independent laboratory at the expense of the party requesting additional testing.
(3) Verified documentation of the chain of custody of the blood or other specimens is competent evidence to establish the chain of custody. [Emphasis added].
[3] Vidal had admitted on deposition of having sexual relations with Rivas during the time of possible conception in 1973, that he kept love poems written during this period authored by Rivas, that Franco may be his son, that Franco calls him father, that he has given money to Rivas for a period in excess of ten years, that he has had additional sexual relations with her, and that when he received letters from her lawyers in reference to paternity and support he forwarded money to her.
[4] See discussion by Judge Hubbart of "discretion" found in Rety v. Green, 546 So.2d 410 (Fla. 3d DCA 1989).
[5] § 59.041 Fla. Stat. (1987) "Harmless error; effect." reads as follows:

"No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed."