566 So.2d 1374 (1990)
Robert Lee DENNIS, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 89-2077.
District Court of Appeal of Florida, Fifth District.
September 20, 1990.
Robert Lee Dennis, Okeechobee, in pro. per.
Harold E. Barker and Charles L. Carlton of Carlton & Carlton, P.A., Lakeland, for appellee.
COWART, Judge.
When is a child illegitimate? When is a child or the alleged father entitled to a jury trial in a paternity case?
*1375 Robert and Donna Dennis were divorced on July 14, 1980. Donna gave birth to a child, Victoria, on November 17, 1980. Therefore, whatever the other details,[1] it is obvious that Victoria was conceived about five months before, and was born about four months after, her mother was divorced. At the behest of the mother acting for the use and benefit of the child, the real party in interest,[2] the Department of Health and Rehabilitative Services (HRS) of the State of Florida instituted action under section 409.2567, Florida Statutes, against Robert to establish that Robert was the father of Victoria and obligated for her support. The action originally alleged it was brought under Chapter 742, Florida Statutes, but was amended to eliminate reference to Chapter 742 and to cite section 61.09, Florida Statutes.
Robert denied paternity and demanded a jury trial on that issue. HRS responded that section 61.011 provides that proceedings for child support under that chapter are in chancery and that a person is not entitled to a jury trial in a chancery proceeding. Robert responded that Chapter 742 "provides the primary jurisdiction and procedures for the determination of paternity for children born out of wedlock."[3] HRS responded that the proceedings under Chapter 742 (1987) are also "in the circuit court, in chancery,"[4] and that chapter contained no provision for a jury trial.
Robert responded that while Chapter 742 (1987) contains no provision for a jury trial, Victoria was born in 1980; therefore, any cause of action relating to her paternity accrued on or before her birth; and in 1980, Chapter 742 did contain a provision for a jury trial on the issue of paternity. HRS replied that while Chapter 742 did, in 1980, contain a provision for a jury trial, the legislature by section 152, Ch. 86-220, Laws of Florida, effective October 1, 1986, removed from Chapter 742 the provision for a jury trial on the issue of paternity; and further, section 18, Ch. 88-176, Laws of Florida, states the legislature's intention that the 1986 amendment should apply to any cause of action pending on July 1, 1988, and to any unfiled causes of action accruing before or after July 1, 1988. Therefore, HRS argues the legislature's intention was that the 1986 statutory provision eliminating a jury trial in paternity cases was to apply to actions such as this one, which was originally filed on June 29, 1987 and which was pending on July 1, 1988. Robert responded that the original statute in Florida providing for the support and maintenance of bastard children was enacted by the legislative council of the Territory of Florida on January 5, 1828, and that act provided that on a charge of bastardy, the issue of paternity shall be tried by a jury[5] and that this right to a jury trial on the issue of paternity existed in 1845, and became secured by Article 1, section 22, Florida Constitution, which provides in part:
The right of trial by jury shall be secured to all and remain inviolate.
Robert pointed out that this constitutional provision for a jury trial guarantees the right to a trial by jury in those cases in which the right was enjoyed at the time the first constitution became effective in 1845, citing In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla. 1986). Robert argued that the effect of all this is that purported fathers of illegitimate children had the right to a jury trial on the issue of paternity prior to 1845 which right was secured by the constitution and therefore the legislature's 1986 and 1988 amendments purporting to eliminate that right to a jury trial in paternity cases are unconstitutional.
*1376 The trial court denied Robert a jury trial and after a non-jury trial, found Robert to be the father of the child and set his support obligation. Robert appeals the denial of his right to a jury trial.
At this point it would appear that the issue in this case sets the stage for a judicial consideration and determination of the important issue as to whether in Florida the defendant in a paternity case has a constitutionally protected right to a jury trial on the issue of paternity which right cannot be violated, diminished or eliminated by statute.
However, we have a way to avoid deciding this issue in this case and we are constrained to do so.[6] The purpose of Chapter 742 is to protect the interests of a child illegitimately conceived and to impose an obligation on the natural father to provide support. Kendrick v. Everheart, 390 So.2d 53 (Fla. 1980); Gammon v. Cobb, 335 So.2d 261 (Fla. 1976). The first sentence of section 742.10 states that chapter relates to the determination of paternity for "children born out of wedlock." This is an ancient descriptive reference to the synonymous terms "illegitimate children" and "bastards" which is in contrast to the terms "legitimate children" and "children born in wedlock." However, the term "born out of wedlock", while short and descriptive, is not entirely accurate or complete. 1 Blackstone Commentaries 446 defines a legitimate child as one "born in lawful wedlock, or within a competent time afterwards." The paternity problem has three subdivisions involving the legitimacy of:
(1) a child conceived before wedlock but born during marriage,
(2) a child both conceived and born outside of its mother's state of wedlock,[7] and
(3) a child conceived during marriage but born after termination of the marriage.
Because of the early absence, and the later scarcity of, divorce, English common law was largely concerned with the first two problems but not the third. In early English common law a child conceived before, but born during, lawful wedlock was considered illegitimate but later civil and canon laws did not allow a child to remain illegitimate if its parents afterwards married and this result is now dictated by statutes in American states, including section 742.091, Florida Statutes. Blackstone (1 Blackstone Commentaries 454) defines a bastard in the context of the second problem as "one that is not only begotten, but born, out of lawful matrimony." Florida cases, specifically Smith v. Wise, 234 So.2d 145 (Fla. 3d DCA 1970), cert. denied, 238 So.2d 422 (Fla. 1970), address the third subdivision of the paternity problem and cite and quote from Kowalski v. Wojtkowski, 19 N.J. 247, 116 A.2d 6, 14, 53 A.L.R.2d 556 (1955), that:
"`And it matters not that the marital bond was severed before the children were born. A legitimate child "is he that is born in lawful wedlock, or within a competent time afterwards." 1 Black. Comm. 446. The rule has its genesis in the maxim of the civil law, pater est quem nuptiae demonstrant (the nuptials show who is the father). "A bastard, by our English laws, is one that is not only begotten, but born, out of lawful matrimony." Ibid. 445. At common law a legitimate child is one "either born or begotten in wedlock;" e converso, an illegitimate child is one "neither begotten nor born in lawful wedlock." Long, The Law of Domestic Relations (3rd ed.) sections 251, 277.'"
See also V.S. v. B.M., 281 So.2d 587 (Fla. 2d DCA 1973) and 10 C.J.S. Bastards § 1, n. 4 (1938).
We hold that in Florida an illegitimate child is one both conceived and born at a time its mother is not lawfully married *1377 and that, conversely, a child conceived before but born while its mother is lawfully married to its reputed father is a legitimate child by virtue of section 742.091 and a child conceived while its mother is lawfully married but born within a period of gestation after the termination of the mother's state of lawful marriage is a legitimate child. Accordingly, we hold that Victoria is a legitimate child not "born out of wedlock" and that the paternity of her father was properly established in equity without a jury trial incidental, and as a prerequisite, to a determination of child support under section 61.09, Florida Statutes.[8]
AFFIRMED.
DAUKSCH and COBB, JJ., concur.
NOTES
[1] Some of the details are whether or not Robert was the biological father of Victoria, and, perhaps, whether or not Robert knew at the time of the divorce that Donna was pregnant.
[2] See Gammon v. Cobb, 335 So.2d 261 (Fla. 1976); Shinall v. Pergeorelis, 325 So.2d 431 (Fla. 1st DCA 1975).
[3] Section 742.10, Florida Statutes.
[4] Section 742.011, Florida Statutes.
[5] Under the English common law, there was no right to a jury trial in bastardy proceedings. See Annotation Paternity Proceedings: Right to a Jury Trial, 51 A.L.R.4th 565 (1987).
[6] We are constrained by the legal principle that a court is to resolve the controversy before it, if possible, without the determination of constitutional issues. See McKibben v. Mallory, 293 So.2d 48 (Fla. 1974).
[7] Of course in this day and time it is possible for a child to be conceived before marriage of its mother and for the mother to then marry and that marriage be legally dissolved before the child is born.
[8] Assuming as correct the purported father's argument as to the existence in Florida of a constitutional right to a jury trial in a case involving the paternity of an illegitimate child, another even more interesting issue, neither argued nor considered in this case and therefore reserved for another case and another day, is whether the legitimacy or illegitimacy of a child, being a mere incident of birth over which the child has no control, constitutes a lawful classification and distinction under constitutional equal protection and due process concepts justifying denying legitimate children and their purported parents jury trials on the paternity issue while granting jury trials to illegitimate children and their purported parents on the same issue. See Gammon v. Cobb, 335 So.2d 261 (Fla. 1976); Levy v. Louisianna, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).