580 So.2d 219 (1991)
Dwight PITCAIRN, Petitioner,
v.
Francine VOWELL, Respondent.
No. 90-2743.
District Court of Appeal of Florida, First District.
May 1, 1991.
Rehearing Denied June 11, 1991.
George E. Schulz, Jr., and Susan L. Turner of Holland & Knight, Jacksonville, for petitioner.
F. Emory Springfield of Springfield & Gunson, P.A., Gainesville, for respondent.
PER CURIAM.
This is an original proceeding by petition for writ of certiorari to review a circuit court order requiring the petitioner, as the alleged father, to submit to the drawing of blood samples for genetic tissue typing, and other scientific examinations for the purpose of determining his paternity of the respondent's child.
The order under review arose in a civil proceeding initiated by the respondent mother pursuant to chapter 742, Florida Statutes (1989), to establish that petitioner is the father of her child. The complaint alleges that she and petitioner engaged in sexual relations during the three-month period "between March 1988 and May 1988" and that as a result, respondent delivered a child, "born out of wedlock on January 9, 1989." Contending that petitioner is the natural father of the child, respondent seeks child support, hospital and medical expenses incurred for the benefit of the child since birth, insurance to secure payment thereof, and attorney's fees and costs of this suit. Petitioner answered, generally denying the allegations of the complaint, and asserted two affirmative defenses, alleging (1) that "[t]he child was born in wedlock and a presumption exists that the husband of Plaintiff is the biological father of the child" and (2) that respondent had *220 sexual relations with men other than petitioner and one of them fathered the child. In reply, respondent mother alleged having sexual relations with no one other than petitioner "during the time of conception of the child." The child was over 15 months old when the suit was filed. Respondent's husband is not a party to this proceeding.
The circuit court granted respondent's motion to require petitioner to submit to a human leukocyte antigen (HLA) bloodtest or other scientific tests to determine paternity.
Seeking review of this order by certiorari, petitioner argues that it departs from the essential requirements of the law because the order fails to give effect to the presumption of legitimacy of the child's birth by operation of law because of the mother's marriage, fails to require respondent to demonstrate that she and her husband are not estopped from declaring the child illegitimate, and fails to require respondent to rebut the presumption of legitimacy by evidence other than a blood test of petitioner. Since petitioner is relying on the presumption of legitimacy in these proceedings, he contends that respondent has the burden of disproving the child's presumed legitimacy. Petitioner further contends that a blood test of petitioner is inadmissible to rebut that presumption, due to his rights to rely on the legitimacy presumption and to preserve his right to privacy. If required to comply with the order, petitioner argues that he will suffer irreparable injury because the burden of proof in this proceeding will be improperly shifted to him, the results of the blood test may make it statistically impossible for him to disprove respondent's allegations of paternity, and his right to privacy will be irretrievably violated. Also, he argues, respondent failed to demonstrate "good cause" for the examination and intrusion into his privacy.
Respondent contends that the order does not depart from the essential requirements of the law, because there is no clearly established principle of law that requires a mother to disprove her husband is the father of her child born during marriage in order to discover a putative father's blood sample, and that petitioner cites no authority for that purported essential requirement of law. She argues that petitioner's "suggested" essential requirement of law would require every married female plaintiff in a paternity action to involve her husband in the litigation as a party or a witness, regardless of whether she in good faith believed that the husband was the father. Also, she says, petitioner's position, which requires respondent to overcome a presumption that was created to protect the welfare of the child, employs the presumption in a manner that frustrates and prevents the natural mother's efforts to protect her child. Additionally, respondent argues that petitioner fails to show any irreparable or substantial harm resulting from the lower court's order, for the shifting of the burden of proof to him is not "harm" in the sense that he will be unjustly penalized. If the results of the blood tests reveal that petitioner is the father, they raise only a rebuttable presumption that he may attack. Also, she contends, the lower court's order would not violate petitioner's privacy right because he waived any privacy right he had in this matter when he chose to engage in sexual relations with respondent, and the information sought is a highly relevant piece of information from a party with whom respondent engaged in sexual relations.
In reply, petitioner argues the trial court had little more than the pleadings and respondent's answers to interrogatories before it when passing on the motion, and thus respondent has not made out even a prima facie case to support her allegations of paternity against petitioner. Petitioner argues that since the child was born during respondent's present marriage and respondent's husband has been certified as the child's father and has been held out as the child's father, the question of estoppel also must be decided before respondent can be entitled to compel another man to submit to an involuntary physical examination and disprove paternity, citing M.P.S.H. v. D.H., 516 So.2d 1151 (Fla. 4th DCA 1987). Petitioner contends that he is not asserting any "new" legal principle that has no authoritative *221 support, because it is a departure from the essential requirements of law to compel discovery when the law neither requires nor permits such enforced disclosure, citing Boucher v. Pure Oil Co., 101 So.2d 408 (Fla. 1st DCA 1957). He argues that it is a departure from the essential requirements of law to fail to give effect to the presumption of legitimacy, citing Vocelle v. Knight Bros. Paper Co., 118 So.2d 664 (Fla. 1st DCA 1960), and that the effect of this presumption is that the party relying on it need not produce any other evidence until the adverse party has rebutted the presumption, citing Ehrhardt, Florida Evidence § 302.2 at p. 72 (2d ed. 1984). Petitioner further argues that it is a departure from the essential requirements of law to permit a married woman to declare her child illegitimate without a finding that it is in the best interests of the child to do so. Finally, petitioner says, respondent has not articulated any compelling state interest in declaring her child to be illegitimate that is sufficient to overcome petitioner's fundamental constitutional right to be free from the intrusion of an involuntary physical examination, citing In re Guardianship of Estelle M. Browning, 568 So.2d 4 (Fla. 1990).
The question before us on a petition for certiorari is whether the trial court's order departs from the essential requirements of law. We agree with the respondent's argument that there is no clearly established principle of law that requires a mother to disprove her husband is the father of her child born during marriage in order to discover a putative father's blood sample.
The issue is not whether the trial court has ruled correctly. The Florida Supreme Court has cautioned that the granting of common law certiorari should be exercised sparingly. Certiorari should be granted only in situations where "there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." Combs v. State, 436 So.2d 93, 96 (Fla. 1983). We see no "miscarriage of justice" in the order being reviewed. We, therefore, deny the request for the issuance of the writ of certiorari to set aside the trial court's pretrial discovery order.
In the situation before us, a trial court has ordered, as part of the discovery process, that the petitioner submit to a blood test. The proceeding includes allegations that the petitioner was the father of a child born on January 9, 1989, and that he had sexual relations with the mother of the child during the time that the child was conceived. The proceeding was brought to determine the paternity of the child and to obtain support and other benefits for the child. The petitioner has denied being the father of the child. Affirmatively, he has raised as a defense that respondent's husband is presumed to be the father of the child born in wedlock. He further alleged that the respondent had sexual relations with persons other than petitioner, and that one of them is the biological father. The mother's reply to the answer specifically asserts that she had sexual relations with no one other than petitioner during the time of the child's conception. Her interrogatories reflect that the mother married on October 8, 1988, and that her husband's name was listed as the father of the child on the birth certificate. The interrogatories further assert that the mother has consistently maintained that the petitioner was the father of the child, and that petitioner has admitted such to named witnesses. The results of the blood test would undoubtedly aid in the pursuit of truth. It is perfectly reasonable that the blood test be ordered.
There is a strong rebuttable presumption that a child born to a married woman is the child of the woman's husband, and that the presumption exists for the protection of the child. However, we cannot agree that because of that presumption the child's mother must first prove that her husband is not the father. The husband is not a required party to an action seeking to determine that another man is the father of the child in order to obtain support from that man. To permit the presumption to be used in that manner would work to the disadvantage of the child and would not serve the best interests *222 of the child. Certainly, if the petitioner wants to bring the husband into the proceeding as a party or call him as a witness, that should be permitted. If the husband believes that he is the father of the child, he should be permitted to enter the proceeding. However, we do not believe it would further the child's interests to require anyone to be a party other than the person alleged in the complaint to be the father of the child.
No one in this case has specifically alleged that the husband is the father of the child. The petitioner, by way of defense, has asserted that there is a presumption that the husband is the father because of the marriage that existed at the time of the birth but he has also alleged that the respondent had sexual relations with "persons" other than the petitioner, and that one of the other "sexual partners" is the biological father of the child. The husband is no more a required party than the alleged other "persons." This proceeding sought to establish that the petitioner was the father. While the participation of others may bear on that question, it should not be a prerequisite to the bringing of the proceeding.
We further disagree with petitioner's argument that the trial court was required to first determine whether respondent and her husband were estopped from denying the husband's paternity of the child before ordering the blood test. Neither estoppel nor waiver has been pled by the petitioner. Estoppel is an affirmative defense and must be specifically pled. Dicks v. Colonial Finance Corp., 85 So.2d 874 (Fla. 1956); Department of Revenue v. Hobbs, 368 So.2d 367 (Fla. 1st DCA), appeal dismissed, 378 So.2d 345 (Fla. 1979); 22 Fla.Jur.2d, Estoppel and Waiver § 8 (1980).
Further, it is our view that a putative father does not have standing to raise the presumption of legitimacy in avoidance of the potential ordering of support for the child. The case brought to our attention regarding the presumption did not involve any situations where the presumption was used to prevent the establishment of parental responsibilities. T.D.D. v. M.J.D.D., 453 So.2d 856 (Fla. 4th DCA 1984), involved a situation where a presumed father used the presumption toward retaining his parental relationship where the mother sought to establish that someone else was the father. Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (1944), M.A.F. v. G.L.K., 573 So.2d 862 (Fla. 1st DCA 1990), Blitch v. Blitch, 341 So.2d 251 (Fla. 1st DCA 1976), and M.P.S.H. v. D.H., 516 So.2d 1151 (Fla. 4th DCA 1987), involved situations where the mother used the presumption in attempting to prevent the husband from avoiding the responsibilities of fatherhood. Likewise, the presumption was utilized in Dennis v. Dept. of Health & Rehabilitative Services, 566 So.2d 1374 (Fla. 5th DCA 1990), in efforts to assist the child to obtain support rather than to avoid the requirement for support. We see no worthwhile purpose to be served by allowing the presumption to be used in furthering the avoidance of parental responsibility.
Petition denied.
SHIVERS, C.J., and JOANOS, J., concur.
NIMMONS, J., dissents with opinion.
NIMMONS, Judge, dissenting.
In its brief order, which imposed the requirement that petitioner submit himself to HLA testing, the court did not make any reference to the legitimate status of respondent's child by operation of law due to her marriage prior to the child's birth, the listing of her husband as the father on the child's birth certificate, and his support of the child; nor did the order make any finding that the mother's attempt through this proceeding to declare her child illegitimate was in the child's best interests.
Several of petitioner's arguments are supported by the applicable Florida law. The order under review is in the nature of a discovery order compelling a physical examination. Certiorari is appropriate to review such an order. T.D.D. v. M.J.D.D., 453 So.2d 856 (Fla. 4th DCA 1984). Relief must be granted in this case because the trial court's order departs from the essential *223 requirements of law in failing to make several essential findings or determinations before it could properly order petitioner to submit to the HLA test. See Combs v. State, 436 So.2d 93 (Fla. 1983).
The facts in this case create a strong presumption of legitimacy of respondent's minor child, who was conceived before respondent's marriage but was born during that marriage. In Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163 (1944), a case involving facts similar to this case, the husband and the wife met in June 1941, married in July 1941, and a child was born during their marriage in February 1942. The husband subsequently challenged the paternity of the child, claiming that he was not the father, and the supreme court affirmed a judgment adverse to the husband, stating:
Where the legitimacy of a child born in wedlock is questioned by the husband and reputed father, one of the strongest rebuttable presumptions known to the law is required to be overcome before the child can be bastardized. At common law the presumption was at one time virtually conclusive. [Citations omitted]. .. . The rule is well established in this country that the husband may make the attack, but in so doing he must overcome the strong presumption of legitimacy by clear and satisfactory testimony. [Citations omitted]. The better rule is that the husband is not required to prove his contention beyond all reasonable doubt, yet his proof must be sufficiently strong to clearly remove the presumption of legitimacy. The evidence must more than cast a strong suspicion or grave doubt on the paternity of the child.
* * * * * *
There is authority that the presumption is weakened in cases where it is shown that the child was born in wedlock but conceived prior thereto. [Citations omitted]. The better view which is adhered to by most courts is to the effect that under such circumstances the presumption is not weakened. We prefer to adhere to the latter rule. It is supported by public policy and a wealth of authority.

(Emphasis added). Id., 16 So.2d at 163-164. See also M.A.F. v. G.L.K., 573 So.2d 862 (Fla. 1st DCA 1990) (the legitimacy of children is one of the strongest rebuttable presumptions known to the law). Therefore, since the facts of this case create the strong rebuttable presumption of legitimacy, that presumption remains operative until respondent presents sufficiently strong evidence to rebut it. See Blitch v. Blitch, 341 So.2d 251, 252-253 (Fla. 1st DCA 1976) (proof necessary to overcome the strong presumption of legitimacy must be more than an emotional outburst by the wife to the effect that the husband is not the father of the child. "The rule is for the protection of the child and should not be lightly considered."). In Dennis v. Department of Health and Rehabilitative Services, 566 So.2d 1374 (5th DCA 1990), the court reiterated the following relevant principle:
[I]n Florida, an illegitimate child is one both conceived and born at a time its mother is not lawfully married and that, conversely, a child conceived before but born while its mother is lawfully married to its reputed father is a legitimate child by virtue of section 742.091 and a child conceived while its mother is lawfully married but born within a period of gestation after the termination of the mother's state of lawful marriage is a legitimate child.
Id. at 1376-77.
I cannot agree with the majority's conclusion that the petitioner does not have standing to raise the presumption of legitimacy. As far as I have been able to discern, there is no case authority for the majority's position. The petitioner's invocation of the presumption of legitimacy serves the salutary purpose out of which the presumption was borne, i.e., maintaining the legitimacy of children. Indeed, precluding the petitioner from invoking the presumption runs counter to that purpose. The fact that the petitioner may benefit from such presumption by demonstrating that the obligation of support rests elsewhere *224 is no reason to bar its use in this case.
Because of the operation of this strong presumption of legitimacy, respondent's husband is an indispensable party to her action to establish paternity. "Indispensable parties are necessary parties so essential to a suit that no final decision can be rendered without their joinder. This is in contrast to other necessary parties, who have an interest in a suit and ought to be made parties, but who do not have to be joined before a final decision may be rendered. A final decision will bind those parties joined in the suit, but will have no effect on the rights of necessary but unjoined parties." Hertz Corporation v. Piccolo, 453 So.2d 12, 14 n. 3 (Fla. 1984). See also Pensacola Jr. College v. Montgomery, 539 So.2d 1153, 1156 (Fla.1st DCA 1989) (whether parties are to be considered indispensable turns on whether their presence is "so essential to the suit that no final decision can be rendered without their joinder"); Amerada Hess Corp. v. Morgan, 426 So.2d 1122, 1125 (Fla. 1st DCA), rev. denied, 436 So.2d 97 (Fla. 1983) (an indispensable party is one whose interest will be substantially and directly affected by the outcome of the case); Grammer v. Roman, 174 So.2d 443, 445 (Fla. 2d DCA 1965) (an indispensable party is one whose interest in the subject matter is such that if he is not joined a complete and efficient determination of the equities and rights between the other parties is not possible). A person is an indispensable party if he has such an interest in the subject matter of the controversy that a final decree between the parties before the court cannot be made without injuriously affecting this person's interests or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience, and unless this person is made a party to the suit, a court of equity will not proceed to a final determination. 39 Fla. Jur.2d Parties § 14 (1982). See also Robinson v. Howe, 35 Fla. 73, 17 So. 368 (Fla. 1895); Florida Land Rock Phosphate Co. v. Anderson, 50 Fla. 501, 516, 39 So. 392 (Fla. 1905); Sarasota Ice, Fish & Power Co. v. Lyle & Co., 53 Fla. 1069, 43 So. 602 (Fla. 1907).
Respondent's husband is an indispensable party to this action because the child was born after respondent's marriage to her present husband, and he is listed on the child's birth certificate as the child's father. It appears that since birth, the child has resided with respondent and her husband, and also that, although in some dispute, her husband has been held out as the child's father. Under these circumstances, respondent's husband is the child's legal father and, therefore, has a material interest in this matter that may be injuriously affected by the outcome of these proceedings. There is no record indication concerning the husband's position in this matter, so in view of his manifest legal interest in the outcome of these proceedings, the trial court erred in allowing respondent to maintain these proceedings and ordering petitioner to submit to HLA testing without first requiring joinder of the husband as a party. In my view, the trial court's failure to require such joinder of a person without whom the action would have to be dismissed amounts to a departure from the essential requirements of law.
The trial court also departed from the essential requirements of law in requiring petitioner to submit to this physical examination without first determining whether respondent and her husband were estopped from denying the husband's paternity of the child. Florida law applicable in circumstances similar to this case requires that the estoppel issue be decided before determining whether blood tests are appropriate; the estoppel doctrine operates to prevent parties from maintaining inconsistent positions concerning a child's paternity, as the following cases indicate.
In T.D.D. v. M.J.D.D., supra, a dissolution proceeding, the wife had sexual relations with her husband before they were married. In order to induce him to marry her, she told her husband that she was having his baby and alleged in her petition for dissolution that the child was born of the marriage. During the dissolution proceedings, the parties entered into a stipulation *225 settling custody, visitation, and child support. However, when the parties appeared at the uncontested hearing, the wife expressed dissatisfaction with the visitation agreement and subsequently filed an amended petition challenging the husband's paternity and a motion to compel him to submit to HLA blood testing. The wife disclosed to the court that the putative father of the child was a convicted drug dealer presently confined in jail who did not know that he was the child's father, and the trial court granted her motion to compel the husband to submit to the blood tests. The husband filed a petition for writ of certiorari, contending that the wife was estopped to challenge paternity and that the paternity proceeding was not in the best interest of the child. The appellate court granted the petition, observing that although the partial record furnished on certiorari did not demonstrate that the estoppel issue was squarely presented to the trial judge, the record contained sufficient unrebutted evidence to raise the issue of estoppel because the wife had represented to her husband that she was pregnant with his child in order to induce him to marry her, she accepted the benefits of the marriage, and she swore in her initial petition that the husband was the father of the child. 453 So.2d at 857. The court held that the trial court erred in compelling the husband to submit to the HLA testing without first determining whether the wife was estopped from challenging the paternity of the child. Id. at 858.
In M.P.S.H. v. D.H., 516 So.2d 1151 (Fla. 4th DCA 1987), a dissolution proceeding, after ordering temporary relief regarding custody of their newborn child, shared parental responsibility, and child support, the trial court granted the husband's motion to compel himself, his wife, and their newborn child to undergo HLA blood testing because both parties had expressed doubt or outright denial that the husband was the father of the child. The wife sought review of that order by certiorari, contending that the husband was estopped to deny he was the father, based upon principles of res judicata, collateral estoppel, and equitable estoppel. The appellate court quashed the order compelling HLA testing and remanded with directions to the trial court to consider the res judicata and estoppel arguments before determining whether blood testing was appropriate, citing T.D.D. v. M.J.D.D., supra. The fourth district recently reaffirmed and applied these decisions in S.W.T. v. C.A.P., 575 So.2d 806 (Fla. 4th DCA 1991).
In Marshall v. Marshall, 386 So.2d 11 (Fla. 5th DCA), rev. denied, 392 So.2d 1377 (Fla. 1980), another dissolution proceeding, the husband denied that he was the father of one child born during the marriage and alleged that he had signed "certain papers," an application for an amended birth certificate and an accompanying affidavit in which the husband and wife acknowledged that they were the child's natural parents, only at the wife's request so that her child could carry his surname. The appellate court reversed the portion of the final judgment that ruled the husband had no obligation to support the child because the child was not, in fact, his blood relation. The court reasoned that the doctrine of equitable estoppel precluded the husband from maintaining the inconsistent position that he was not the child's father after having signed a document wherein he stated that he was the father, because the position of the child had been altered to his detriment by amending the birth certificate. The court observed, by way of example, that had the child claimed support from his natural father, the birth certificate showing another person as the father could be used as a defense and that "the husband has made a false statement to the State of Florida concerning the paternity of the child and should not be afforded the aid of the court in avoiding his responsibilities." 386 So.2d at 12.
In Wade v. Wade, 536 So.2d 1158 (Fla. 1st DCA 1988), another dissolution proceeding, the wife became pregnant by another man during the parties' marriage and, following the child's birth, the husband agreed to accept the child as his own, signed the child's birth certificate as the father, gave the child his surname, presented the child at church for baptism as his *226 son, carried the child as his for all purposes as a military dependent and as a dependent for tax purposes, listed the child as his son in his will, represented to the child that he was his father from the time of the child's birth in 1979 up to the time of the hearing on the petition, and fully supported the child until 1988. Noting that courts have applied the doctrine of equitable estoppel to preclude a person from maintaining inconsistent positions to the detriment of another in cases where a parent disavows paternity, this court held that the husband was estopped from disavowing the child as his own for purposes of parental support.
In Van Nostrand v. Olivieri, 427 So.2d 374, 376 (Fla. 2d DCA 1983), the court held that the mother was precluded from contending that her former husband was not the father of her child born during that marriage where the mother acknowledged in a separation agreement that the child was born of the marriage and had obtained an order requiring her former husband to pay child support.
While these cases do not involve the precise fact situation as the case presently before the court, they nevertheless firmly establish the principle that society's interest in the preservation of the presumed legitimacy of the child is so significant that the mother and her husband may well be estopped by reason of their conduct from seeking to repudiate the previously admitted paternity. The record in this case contains sufficient facts to warrant consideration and determination of the question of estoppel before petitioner can be ordered to submit to HLA testing for the purpose of making this otherwise legitimate child illegitimate. In my view, the court's failure to consider the estoppel question before requiring the subject testing is a departure from the essential requirements of the law.
Additionally, even if the respondent is ruled not to be so estopped, the trial court must nevertheless determine whether it is in the child's best interests to allow the mother to challenge the child's legitimacy. In Blitch v. Blitch, supra, in obtaining their marriage license, the husband and the wife both swore that they were expectant parents, and after they were married a child was born. In her petition for dissolution, the wife alleged that the child was born of the marriage. The husband denied that he was the child's father but admitted that the child was born during the marriage and that he had acknowledged to other persons that he was the child's father. Evidence was presented that the wife had told other family members that the husband was not the child's father, but there was also evidence that the husband acknowledged to other persons that he was the child's father. On review of the final judgment granting dissolution of the marriage, this court reversed the ruling that the child was not a legitimate child of the marriage and remanded with directions to amend the final judgment to provide that the child was a legitimate child of the marriage and to determine what support, if any, the husband should provide for the child. 341 So.2d at 252-53. In reaching this holding, the court quoted from Eldridge v. Eldridge, supra, regarding the strong presumption of legitimacy and stated that "[t]he purpose of the strong presumption of legitimacy when a child is either born or conceived in wedlock is to protect the interest and welfare of the child. `The child's welfare is paramount. Too often this is forgotten.'" 341 So.2d at 252 (emphasis added). The court concluded that "the rule is for the protection of the child, and it should not be lightly considered." Id. at 253. See also T.D.D. v. M.J.D.D., 453 So.2d at 758.
The order under review is silent as to the best interests of the child. Whether the child's best interests are to be served by permitting this challenge to legitimacy is an essential concern that should be decided before ordering discovery by way of HLA testing to prove such illegitimacy. The absence of such a finding in this order is again a departure from the essential requirements of the law.
The order under review departs from the essential requirements of the law in the several respects discussed above. For this reason the petition for writ of certiorari should be granted and the order quashed with directions to the trial court to reconsider *227 the application in a manner that accords with the above referred authorities.
I realize that heavy equities may weigh on the side of the respondent in this case, particularly in respect to the timeliness and availability of care and support of the child. However, I believe that the above authorities compel the result which I have reached. Because many of those decisions were decided before HLA testing became available to determine paternity with much greater certainty, because illegitimate status of a child does not appear today to subject one to the opprobrium that it did several decades ago, because knowledge of the medical history of the true blood parent and other relatives may often be essential in the medical treatment of a child, and because this issue is essentially one of public policy stemming from judicial decisions, I would certify the following question to the supreme court as one of great public importance:
IS A TRIAL COURT AUTHORIZED TO COMPEL AN ALLEGED STRANGER TO THE MARRIAGE TO UNDERGO HLA TESTING FOR PURPOSES OF ESTABLISHING PATERNITY OF A CHILD BORN DURING THE PETITIONING MOTHER'S MARRIAGE TO HER HUSBAND BEFORE DETERMINING (1) THAT THE HUSBAND HAS BEEN MADE A PARTY TO THE MOTHER'S PATERNITY ACTION, (2) THAT THE PARTIES TO THE MARRIAGE ARE NOT ESTOPPED TO DENY THE HUSBAND IS THE FATHER, (3) THAT IT IS IN THE CHILD'S BEST INTEREST THAT THE PRESUMPTION OF LEGITIMACY BE SET ASIDE, AND (4) THAT THE PRESUMPTION OF LEGITIMACY HAS BEEN REBUTTED BY SUBSTANTIAL EVIDENCE?