599 So.2d 175 (1992)
Steven G. MARSHEK, Petitioner,
v.
Jennifer S. MARSHEK, Respondent.
No. 91-3562.
District Court of Appeal of Florida, First District.
April 29, 1992.
Kurt Andrew Simpson and Bruce R. Anderson, Jr. of Kurt Andrew Simpson, P.A., Jacksonville Beach, for petitioner.
Barry L. Zisser and Nancy N. Nowlis of Zisser, Robison, Brown, Nowlis & Cumbie, P.A., Jacksonville, for respondent.
ALLEN, Judge.
The petitioner seeks a writ of certiorari, challenging an order compelling him to submit to a Human Leukocyte Antigen (HLA) blood test. The court ordered the HLA test in a proceeding for the dissolution of the parties' marriage, after the respondent disputed the petitioner's paternity of a minor child born during the marriage. The petitioner asserted that the respondent should be estopped from contesting his paternity, and we conclude that the court *176 departed from the essential requirements of law by ordering the HLA test before resolving the petitioner's claim of estoppel.
In the dissolution proceeding the petitioner sought to be designated as the primary residential parent of a minor child alleged to have been born of the marriage. The respondent sought to have the sole parental responsibility for the child, denying that the petitioner is the child's biological father. The court denied the respondent's initial request for an HLA test to assist in the determination of paternity. When the respondent renewed her request, the petitioner asserted that the respondent should be estopped from denying his paternity. The petitioner made various factual allegations to support the claim of estoppel, and the court acknowledged the petitioner's argument in this regard. But the court did not resolve the matter, indicating instead that it was bound by our decision in Pitcairn v. Vowell, 580 So.2d 219 (Fla. 1st DCA 1991), and thereby compelled to order the HLA test.
There are several significant distinctions between Pitcairn and the present case, including the circumstance that a claim of estoppel was not properly presented for the court's consideration in Pitcairn. In other cases where a claim of estoppel was properly presented, it has been indicated that the matter should be resolved before an HLA test is mandated. See S.W.T. v. C.A.P., 575 So.2d 806 (Fla. 4th DCA 1991); M.P.S.H. v. D.H., 516 So.2d 1151 (Fla. 4th DCA 1987); T.D.D. v. M.J.D.D., 453 So.2d 856 (Fla. 4th DCA 1984). Like the present case, both S.W.T. and T.D.D. involved a dissolution proceeding at which the husband asserted that the wife should be estopped from denying his paternity of a minor child born during the marriage.
Section 742.12(1), Florida Statutes, authorizes HLA testing in certain circumstances. The statute is expressly made applicable in any proceeding to establish paternity, and while the test results are not conclusive on the issue they may be received as evidence. But, to whatever extent section 742.12(1) might otherwise apply, such evidence would not be relevant if the party requesting the HLA test is estopped with regard to the issue of paternity. Accordingly, the respondent may not rely on the statute if the petitioner prevails in his assertion that the respondent should be estopped from contesting his paternity.
The court departed from the essential requirements of law by misapplying Pitcairn and ordering an HLA test at this time. As in S.W.T. and T.D.D., before ordering an HLA test the court should resolve the petitioner's claim of estoppel. The petition for a writ of certiorari is granted and the challenged order is quashed.
SMITH, J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissenting.
I would not issue the writ of certiorari to the lower court's order directing petitioner to submit to HLA testing. In so concluding, I consider it necessary to restate some cautionary comments made by the Florida Supreme Court to appellate courts when considering petitions for certiorari:
In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error. Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.

Combs v. State, 436 So.2d 93, 95-96 (Fla. 1983) (emphasis added).
In that I regard the order to be correct, albeit not for the explicit reasons stated by the lower court, the order, if reviewable by direct appeal, would be affirmable because no demonstration has been made that it *177 was clearly erroneous.[1] Nor in my judgment is the order reviewable under the far more stringent certiorari standard for the simple reason, as stated in Combs, that "there has been [no] ... violation of a clearly established principle of law resulting in a miscarriage of justice." Id. at 96. In fact, if the court below had denied the motion seeking to compel petitioner to submit to HLA testing, the order, as explained infra, would have constituted a violation of a mandatory statutory requirement.
Section 742.12(1), Florida Statutes (1989), provides, in pertinent part:
In any proceeding to establish paternity in law or in equity, the court on its own motion may or upon request of a party shall require the child, mother, and alleged fathers to submit to Human Leukocyte Antigen tests or other scientific tests that are generally acceptable within the scientific community to show a probability of paternity... .
(Emphasis added.) Prior to 1989, the underscored language read: "[T]he court ... upon request of a party may require... ." § 742.12(1), Fla. Stat. (1987) (emphasis added). Thereafter the legislature amended the statute by changing the word "may" to "shall," effective October 1, 1989.[2] Ch. 89-183, § 10, Laws of Fla. (1989). I consider that after the effective date of the amendment, once a party challenges the paternity of the presumptive child, the court has no discretion but must order such testing.
When statutory language is stated unambiguously, it must be given its plain meaning and effect. State v. Barnes, 595 So.2d 22, 24 (Fla. 1992); McDonald v. Roland, 65 So.2d 12, 14 (Fla. 1953). As a consequence, a "[c]ourt has no authority to change the plain meaning of a statute where the legislature has unambiguously expressed its intent." Barnes, 595 So.2d at 24.
Although I conclude that the legislature, in enacting section 742.12(1), has clearly and expressly manifested its intent, I am not unaware that the Third District in Vidal v. Rivas, 556 So.2d 1150 (Fla. 3d DCA 1990), construed the following language in section 742.12(2) as directory only: "If the test results or the expert analysis of the inherited characteristics is disputed, the court, upon reasonable request of a party, shall order that an additional test be made... ." In so deciding, the court applied the rule recognized in S.R. v. State, 346 So.2d 1018, 1019 (Fla. 1977), stating that although "shall" is ordinarily construed as having a mandatory effect, if there is any doubt as to the construction of the word, we are advised to consider its context and the legislative intent as expressed in the statute. The reason for applying a permissive construction to section 742.12(2), the Third District explained in Vidal, is that if the court interpreted the word "shall" as mandatory, it would render the phrase immediately before it, "upon reasonable request," meaningless. Vidal, 556 So.2d at 1151. In contrast to subsection (2), there is no such qualifying language in subsection (1) promoting an interpretation that "shall" connotes anything other than its ordinary, mandatory meaning.
Although I see no need to look to language other than that clearly expressed in section 742.12(1), nevertheless, because the majority has decided to issue the writ, I consider it helpful to explain the legislative purpose behind the enactment of the 1989 amendment to section 742.12(1). Subchapter IV of Title 42 of the United States Code created a federal-state partnership to establish and enforce awards for child support.[3] Maureen Gallen, Note, Congress Demands Stricter Child-Support Enforcement: *178 Florida Requires Major Reforms to Comply, 10 Nova L.J. 1371, 1378-79 (1986). Section 666, located under subchapter IV, prescribes procedures for improving the effectiveness of child-support enforcement. The federal Family Support Act of 1988, which includes 42 U.S.C. § 666 (1991), established guidelines that states must follow in order to continue receiving federal funds. See Staff of Fla.S.Comm. on Judiciary-Civil, SB 532 (1989) Staff Analysis 1-2 (Mar. 23, 1989) (Fla. State Archives) (hereinafter "Senate Staff Analysis"). Section 666(a)(5)(B) explicitly requires states to make paternity testing mandatory upon the request of any party to a contested paternity proceeding.[4]
As a consequence of the mandate of the federal legislation, the Florida Senate and House of Representatives each passed bills changing the word "may" in section 742.12(1) to "shall." Senate Staff Analysis, at 1-2; Staff of Fla.H.R.Comm. on Judiciary, CS/HB 258 (1989) Staff Analysis 1-3 (final June 22, 1989) (Fla. State Archives). These legislative analyses explain that section 742.12(1) had formerly provided for HLA testing at the court's discretion, whereas the Family Support Act of 1988 required states to adopt procedures requiring genetic testing upon request of any party. It was thus stated that "the Legislature must act in order to meet these requirements." Senate Staff Analysis, at 2.
Because respondent filed her motion for HLA testing after the legislature had amended section 742.12(1) to include the mandatory language required by Congress, the trial court had no discretion in ordering petitioner to comply. Cf. McDonald v. Roland, 65 So.2d 12, 14 (Fla. 1953) (legislative history showed that House committee changed "shall," having a normal mandatory meaning, to "may," having a normal permissive meaning, thus demonstrating the legislature's clear and specific intent to give counties the discretion to supplement salaries of juvenile court judges).
In granting the writ, the majority relies upon three cases in which the Fourth District held that a trial judge must resolve a non-movant's claim of estoppel before granting a motion for HLA testing. S.W.T. v. C.A.P., 575 So.2d 806 (Fla. 4th DCA 1991); M.P.S.H. v. D.H., 516 So.2d 1151 (Fla. 4th DCA 1987); T.D.D. v. M.J.D.D., 453 So.2d 856 (Fla. 4th DCA 1984). It should be noted, however, that the Fourth District decided M.P.S.H. and T.D.D. before section 742.12(1) was amended. In S.W.T., decided after the amendment became effective, the court simply followed M.P.S.H. and T.D.D., without mentioning section 742.12. Because the Fourth District did not consider the mandatory language of section 742.12(1), these cases do not support the conclusion that such language may be disregarded once a party raises the defense of estoppel. Cf. Orr v. Trask, 464 So.2d 131, 135 (Fla. 1985) ("Courts of equity have no power to overrule established law.").
Although the above cases do not explicitly so state, the underlying theme in each appears to be that if the test results reveal that the presumptive father was not the natural father of the child born during the parties' marriage, the relationship between the two could be substantially altered. I consider it important to note that even if the petitioner were determined by HLA testing not to be the child's biological father, it does not automatically follow that he would be denied custody in favor of the natural father. The paramount consideration in determining custody of a child, whether born in or out of wedlock, remains the best interest and welfare of the child. In re R.L.G., 274 So.2d 4 (Fla. 4th DCA 1973). Moreover, although a person may have no legal duty to provide support for a minor child who is neither his natural nor adopted child, this rule is subject to the important qualification that such person may nonetheless contract to furnish support to the child. Hippen v. Hippen, 491 So.2d 1304 (Fla. 1st DCA 1986). Clearly, it is premature to consider at this time what *179 consequence may ensue from HLA testing, and it is therefore inappropriate to presume that the petitioner's rights with regard to the child would necessarily be jeopardized if the results reveal he is not the father.
Perhaps an additional factor which motivated the Fourth District Court to decide that the defense of estoppel must be considered before entry of an order compelling HLA testing is the potential effect on the child of disclosure of the fact that the tested spouse was not in fact the biological parent of the child, a person with whom the spouse had enjoyed a hitherto close, bonding relation for a number of years. This potentiality cannot be lightly disregarded, yet Congress and the Florida Legislature, correctly or incorrectly, have now statutorily supplanted this consideration in any determination whether testing should be required. Instead, they have made a deliberate policy choice requiring testing in order to promote the goal of shifting responsibility for the support of dependent children from the public to those who are legally responsible for their care and welfare.[5]
On balance, I do not consider this legislative policy decision unwise. If testing is not performed, and the petitioner, for whatever reason in the future, is unable to provide support for the child, the responsibility therefor could be shouldered by the public, notwithstanding that the putative father, whom testing might reveal to be the child's biological father, may have the means of support. Although there are admittedly no facts in the record revealing that petitioner is unable or unwilling to provide the necessary care for the child, this concern is no longer a relevant factor in deciding whether to grant a motion for HLA testing. As stated, judicial discretion in this regard has now been displaced by legislative fiat.
For the above stated reasons, I would deny the petition for writ of certiorari directed to the order requiring the parties to submit to HLA testing.
NOTES
[1] Were the order at issue reviewable by direct appeal, we would have an obligation to affirm if the result reached is correct for whatever reason. Chase v. Turner, 560 So.2d 1317, 1320 (Fla. 1st DCA 1990).
[2] Petitioner's petition for dissolution of marriage and respondent's paternity proceeding were filed after the effective date of the amendment, thus the amendment clearly applies to this case.
[3] See Kelly v. Department of Health & Rehabilitative Services, 596 So.2d 130 (Fla. 1st DCA 1992), for a general discussion regarding federal requirements of states which operate Aid to Families with Dependent Children programs under 42 U.S.C. § 602.
[4] Section 666(a)(5)(B) directs the states to establish "[p]rocedures under which the State is required ... to require the child and all other parties, in a contested paternity case, to submit to genetic tests upon the request of any such party." (Emphasis added.)
[5] For example, Florida's shared contribution in providing aid to families with dependent children increased 152 percent after inflation during the past ten years. In 1982, Florida furnished support to approximately 92,000 persons in the amount $83.7 million dollars. By 1992, these numbers had increased to 199,700 persons, who collected $310 million dollars in such benefits. Carrol Dadisman, "Roots of Budget Problems Run Deep," Tallahassee Democrat, Mar. 8, 1992, at 2B.