THOMPSON, C.J.
P.C. appeals his dismissal from a dependency case. The court based the dismissal on Department of Health and Rehabilitative Services v. Privette, 617 So.2d 305 (Fla.1993). We reverse because we conclude that Privette has no application to the instant case.
The Department of Children and Family Services brought this dependency case after having sheltered the child at birth. The child’s two older siblings had been removed from the home. The child was born while P.C. was married to the mother, but it was stipulated that the biological father was a man who drowned a few months before the child’s birth. P.C.’s name was listed as the father on the birth certificate; thus, he is the legal father of the child. P.C. attended the child’s birth during a work release liberty from the county jail, but in the months between the birth and the hearing in issue, he had no other contact with the child because of his *1073 incarceration. We conclude that the court erred in conducting the Privette hearing.
The court stated that the purpose of the hearing was to determine whether it was in the child’s best interests to be declared not to be the product of the marriage between the mother and P.C. Although the ■ Department informed the court that it was present only for a dependency hearing and not for a determination of legal versus the biological status of P.C., the court proceeded.[1] In Privette, the department sought to pursue the alleged biological father of a child born when the mother was married to a man who was listed as the father on the birth certificate. The court stated that the presumption of legitimacy is based on the policy of protecting the welfare of the child — a guiding principle that must inform every action of the courts in this sensitive area. Under Article I, section 9 of the Florida Constitution[2], the court held, once children are born legitimate, they have a right to maintain that status both factually and legally if doing so is in their best interests.
The court also stated:
The child’s legally recognized father likewise has an unmistakable interest in maintaining the relationship with his child unimpugned, Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re D.B., 385 So.2d 83 (Fla.1980), such that his opposition to the blood test and reasons for so objecting would be relevant evidence in determining the child’s best interests. (FN3)
FN3. For example, a legal father who is actively participating in the care and custody of his legal child would be entitled to object to the test on grounds that he is satisfied with his status and does not want the child’s legitimacy questioned in any way. See Brenda J. Runner, Protecting a Husband’s Parental Rights When His Wife Disputes the Presumption of Legitimacy, 28 J.Fam.L. 115 (1989 90). In appropriate cases, parents can be equitably estopped from disputing paternity where they previously have acknowledged the legal father’s paternity, e.g. Wade v. Wade, 536 So.2d 1158 (Fla. 1st DCA 1988); Boyles v. Boyles, 95 A.D.2d 95, 466 N.Y.S.2d 762 (1983), or the legal father’s paternity could be ruled unassailable based on other equitable principles where the legal father has established a mutually rewarding relationship with the child, he desires to continue exercising parental rights, he is supporting the child to the best of his ability, and maintaining the existing relationship is in the child’s best interests. See Marshek v. Marshek, 599 So.2d 175 (Fla. 1st DCA 1992); Atkinson v. Atkinson, 160 Mich.App. 601, 408 N.W.2d 516 (1987). Obviously, the same concerns would not apply where the legal father has abandoned the child or otherwise has acted contrary to the child’s best interests.
Id. at 307-08.
In Daniel v. Daniel, 695 So.2d 1253 (Fla.1997), the court explained that Pri-vette “addressed a case of contested pater *1074 nity involving blood tests, and its application is limited to those instances where a child faces the threat of being declared illegitimate, and the ‘legal father’ also faces the threat of losing parental rights which he seeks to maintain.” Daniel, 695 So.2d at 1255. In the instant case, there was no reason to hold a Privette hearing. The child did not face the threat of being declared illegitimate, except by virtue of the Privette hearing itself. Indeed, although here the legal father seeks to maintain his parental rights, there is no claim by anyone that another has a right to fatherhood superior to P.C.’s. It was only the Privette hearing itself that put into doubt P.C.’s legal fatherhood. Furthermore, the mother and her family support P.C.’s claim to legal fatherhood. Compare, S.B. v. D.H., 736 So.2d 766 (Fla. 2d DCA 1999) (holding that the putative biological father could not “maintain this paternity action concerning a child conceived by a married woman when both the married woman and her husband object”). Accordingly, the order of dismissal is reversed and the cause remanded.
REVERSED AND REMANDED.
COBB and PETERSON, JJ., concur.

. The court stated, "[I]f the court was to find that it was in the child’s best interest to deleg-itimize the child, what happens next? I would presume then there’s no trial against him [P.C.] because unless an appellate court told me otherwise, there would be no trial against a nonparent.... So the father then would be excused and the trial would proceed as to the mother.”

. "No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself.”