485 So.2d 491 (1986)
Arme JOYNER, Appellant,
v.
Coley HAIR, Appellee.
No. 85-2323.
District Court of Appeal of Florida, Third District.
March 25, 1986.
Melvin A. Rubin, Miami, for appellant.
No appearance for appellee.
Before BARKDULL, FERGUSON and JORGENSON, JJ.
*492 FERGUSON, Judge.
This appeal in the name of Arme Joyner, a recipient of Aid to Families with Dependent Children benefits, is actually being prosecuted by the State of Florida Department of Health and Rehabilitative Services (HRS) as subrogee and real party in interest.[1] The challenge is to a trial court order directing that the father submit to blood testing for the purpose of verifying paternity.
Shortly after an April 12, 1985 hearing on a complaint to determine paternity, a final judgment was entered finding the appellee to be the father and requiring him to pay child support.[2] On August 30, 1985, the parties appeared before the court on the State's motion for contempt to enforce the support provision of the paternity judgment. At that hearing appellee, appearing without counsel, expressed doubt that he was the children's father. The court granted appellee's ore tenus motion for a physical examination of the parties and the children and required that he pay $244 for tests. A transcript of the proceedings evidences an agreement between the parties that the testing should be done.[3]
In addition to ordering a Human Leukocyte Antigen (HLA) typing blood test, the order on the motion for physical examination provides that "[t]he results of the HLA blood test shall be admissible into evidence without expert testimony and shall be determinative of paternity." Appellee was also ordered to continue support payments.
The contentions raised by appellant in this appeal are (1) the trial court erred in ordering the parties to submit to an HLA blood test without proper notice or pleading for said relief and in making the results therefrom determinative of paternity, and (2) the trial court violated res judicata principles in ordering the parties to submit to an HLA blood test when the paternity issue had been previously resolved.
Appellant's contention regarding a lack of prior notice is without merit. Not only was there no objection to re-opening the action so as to allow appellee to defend against the allegations of paternity, but the parties also agreed that a verification of paternity by reliable blood typing tests would be in the best interests of the parties. Further, the trial court was obviously satisfied with the appellee's explanation that his failure to appear for the scheduled trial was inadvertent.[4]
Appellant's reliance on the cases which hold that a court may not modify a prior child support order in the absence of a pleading requesting such a modification is misplaced. First, the order under review does not modify the order of support, but instead expressly leaves it in place subject to a future condition which may never occur. That future condition is a determination that appellee is not the father of the dependent children. Second, because the HLA blood test result upon which future support obligations are made dependent *493 was agreed to by the parties, appellant's actions constitute a waiver of the notice requirement. See Seaboard Realty Co. v. Seaboard All-Florida Railway, 91 Fla. 670, 108 So. 675 (1926); Krasnosky v. Krasnosky, 282 So.2d 186 (Fla. 1st DCA 1973); see also Singer v. Singer, 442 So.2d 1020 (Fla. 3d DCA 1983) (waiver encompasses conduct warranting inference of relinquishment of a known right).
The court's grant of a hearing sua sponte on a motion for relief from the judgment of paternity, under the circumstances, was fair and legally correct. A paternity judgment has ramifications which go far beyond the monetary rights and obligations of the parent parties. The court so noted in Locklear v. Sampson, 478 So.2d 1113, 1115 (Fla. 1st DCA 1985):
[T]he fact of paternity should be reliably established because the minor child's parental medical history might become important or even critical in the medical treatment of the child and his or her offspring. Rights of inheritance are affected. In some instances even citizenship status may be affected by a determination of paternity.... [A] judgment ... of paternity should not be entered solely upon the basis of unadmitted and unproven allegations of paternity (which here were disputed); rather, it should be based upon some competent, substantial evidence.
There is not much to add to Judge Zehmer's thoughtful opinion which we adopt in total.[5]
Paragraph six of the court's order which makes the blood test result determinative of the paternity issue is disapproved. When used with two other available red blood cell tests, the HLA blood test is scientifically proven to exclude ninety-nine per cent of all men who could not have fathered the child. The one per cent margin of error is a sufficient reason why the test cannot be solely determinative. See Strickland v. Strickland, 456 So.2d 583 (Fla. 2d DCA 1984). The parties should have the opportunity to present to the court any other evidence which is relevant and material.
Affirmed as modified.
NOTES
[1] As a condition to receiving benefits for dependent children the mother-applicant must assign to HRS the right to bring an action against the father for child support payments. The payments are applied to reimburse the State.
[2] Appellee was represented by the Legal Aid Society of the Dade County Bar Association in the paternity action. It is admitted that the paternity judgment was obtained by default.
[3] The following exchanges appear in the transcript of the proceedings:

THE COURT: Why are you so unfriendly to each other?
[APPELLANT]: I told him to go have a baby blood-test, you know.
THE COURT: He's going to have a bloodtest. If he has the bloodtest he agrees he's going to pay considerably more money than ordered to pay, if he turns out to be the father. Right? Make a note of that.
* * * * * *
[APPELLEE]: Could I take the kids anywhere I want to get the bloodtest?
[APPELLANT]: No.
[4] STATE ATTORNEY: Why didn't you fight it in court when we had it [hearing on paternity complaint]  it's a legal aid case, wasn't our case, Your Honor....
[APPELLEE]: Didn't come to court. I had got lost. I called and told them I would be there. When I got there it was over. I didn't get a chance to say anything.
[5] Counsel for appellant, appearing without opposition, brought to the court's attention the recent Locklear case which is admittedly contrary to his position. Such a display of ethical sensitivity is worthy of note.