566 So.2d 9 (1990)
Romer FERGUSON, Appellant,
v.
Patricia A. WILLIAMS, Appellee.
No. 90-457.
District Court of Appeal of Florida, Third District.
July 31, 1990.
*10 Marco Loffredo, North Miami, for appellant.
Melvin A. Rubin, Miami, for appellee.
Before FERGUSON, JORGENSON and GODERICH, JJ.
JORGENSON, Judge.
Romer Ferguson appeals from an order of final summary judgment determining paternity. For the following reasons, we reverse.
In April, 1988, Patricia Williams and the State of Florida sued Romer Ferguson in an action to determine paternity and award child support. The complaint alleged that Ferguson was the father of Williams' two daughters, born in 1981 and 1984. In a stipulation, Ferguson and Williams agreed to submit to Human Leukocyte Antigen [HLA] typing, and agreed that the results of the typing would be admissible into evidence. The stipulation was silent as to authentication of the documents evidencing the test results. The trial court entered an order adopting the stipulation.
Williams moved for summary judgment, alleging that the results of the HLA typing revealed a 99.95% probability that Ferguson was the father of one of her daughters, and a 99.16% probability that he was the father of her other daughter. The motions for summary judgment[1] were accompanied by affidavits averring that she had sexual intercourse with Ferguson during the periods of conception and did not have sexual intercourse with any other man during those periods. Williams also submitted the paternity reports prepared by the testing laboratory in North Carolina. The reports contained in the record on appeal are clearly photocopies. It is impossible to decipher the signatures of the person or persons who certified that the testing was done "in accordance with medically accepted procedures" and that the "conclusions are correct as reported." The notary's attestation was not made under seal.
In August of 1989, Ferguson filed his answer and affirmative defenses to the action. He denied being the father of Williams' two children and alleged that Williams had other sexual encounters during the periods of conception.
On the day the motions for summary judgment were heard, Ferguson filed an affidavit again denying that he was the father and averring that Williams had been involved with other men during the critical time periods. The trial court granted Williams' motions for summary judgment, finding that Ferguson was the father of *11 the two girls.[2] The trial court erred in entering summary judgment.
Section 742.12, Florida Statutes (1989), provides that HLA test results, "together with the opinions and conclusions of the test laboratory," are admissible in evidence "and should be weighed along with other evidence of the paternity of the alleged father unless the statistical probability of paternity equals or exceeds 95 percent." A statistical probability of 95 percent or more creates a rebuttable presumption, as defined by § 90.304, that the alleged father is the biological father of the child. If a party fails to rebut the presumption of paternity which arose from the statistical probability of paternity of 95 percent or more, the court may enter a summary judgment of paternity. Section 742.12 creates a statutory presumption.[3] It does not supercede the rules governing the admissibility of business records. See section 90.803(6), Florida Statutes (1989); see generally C. Ehrhardt, Florida Evidence § 803.6 (2d Ed. 1984).
In Dutilly v. Dept. of Health & Rehabilitative Services, 450 So.2d 1195 (Fla. 5th DCA 1984), the court held that, in a contested paternity action, a paternity report similar to the one submitted in this case fell short of the requirements of section 90.803(6), Florida Statutes (1981), governing the admission of business records. The court reasoned that, because "neither the notation nor the affidavit reflects, as 90.803(6) requires, that the results were compiled in the course of regularly conducted activity, by someone or from information transmitted by someone with knowledge, that the practice of the "business" activity was to keep such records and that the opinion of paternity contained in the report would be admissible under sections 90.701-90.705," 450 So.2d at 1197, the test results should not have been considered for purposes of the summary judgment motion. Id. Without the test results, genuine issues of material fact remained precluding the entry of summary judgment. Id. The same result obtains here.
Counsel for the mother and the state argues that, because Ferguson stipulated to the admission of the test results, Dutilly does not apply.[4] Although he stipulated to the admission of the HLA test results, Ferguson did not consent to a wholesale circumvention of the rules of evidence. Although the test results may be admitted into evidence pursuant to section 742.12, the records reflecting those results must be properly authenticated and a proper predicate must be laid. Haphazard admission of paternity reports such as the ones in this case does a disservice to the parties, the children, and the legal process. "A paternity judgment has ramifications which go far beyond the monetary rights and obligations of the parent parties ...' The fact of paternity should be reliably established because the minor child's parental medical history might become important or even critical in the medical treatment of the child and his or her offspring. Rights of inheritance are affected. In some instances even citizenship status may be affected by a determination of paternity... . [A] judgment ... of paternity should not be entered solely upon the basis of unadmitted and unproven allegations of paternity (which here were disputed); rather, it should be based upon some competent, substantial evidence.'" Joyner v. Hair, 485 So.2d 491, 493 (Fla. 3d DCA 1986), citation omitted, quoting Locklear v. Sampson, 478 So.2d 1113, 1115 (Fla. 1st DCA 1985).
We are cognizant of the state's interest in obtaining an efficient and timely *12 resolution of paternity proceedings. Those concerns cannot, however, override the need for an accurate determination of paternity.[5] It seems to us that it is not too great an imposition on the state to require it to prove its case in compliance with the rules of evidence. For the foregoing reasons, we reverse the order of final summary judgment determining paternity and remand for further proceedings.
Reversed and remanded.
NOTES
[1] Williams filed separate motions for each child.
[2] No testimony was taken at the hearing, and no court reporter was present.
[3] The presumption created by section 742.12 affects the burden of proof. It is not a "bursting bubble" or "vanishing" presumption as defined in sections 90.302(1) and 90.303. See Aetna Casualty & Sur. Co. v. Pappagallo Restaurant, Inc., 547 So.2d 243 (Fla. 3d DCA 1989) (pursuant to section 90.302(1), under "bursting bubble" presumption, once credible evidence introduced to disprove presumed fact, presumption no longer effective and case decided without it).
[4] Counsel further argues that Dutilly is no longer viable precedent in light of the enactment of section 742.12. We reject that argument. As we stated earlier, section 742.12 merely creates a statutory presumption; it does not repeal the Florida Evidence Code.
[5] Although the Florida legislature has deemed HLA test results highly probative in paternity disputes, those test results are not always dispositive. See Muench & Sanders, The "Probability of Paternity" May Not Be, 60 Fla. Bar J. 31 (March 1986). Entry of summary judgment in contested paternity actions may not be prudent, particularly where the plaintiff's case depends almost entirely on the HLA test results.