718 So.2d 354 (1998)
Dionne A. MORRIS, Appellant,
v.
Michael CRAWFORD, Appellee.
No. 96-2217.
District Court of Appeal of Florida, Fourth District.
September 28, 1998.
David B. Stearns of Stearns & Zagarolo, P.A., Boca Raton, for appellant.
Anthony B. Borras of Law Offices of Anthony B. Borras, P.A., Plantation, for appellee.
SHAHOOD, Judge.
Appellant, Dionne Morris, appeals from an order dismissing her paternity petition against appellee, Michael Crawford, with prejudice. We hold that the trial court erred in entering an order of dismissal with prejudice, and accordingly reverse and remand with directions to the trial court to reinstate Morris' paternity petition.
After filing a complaint to establish paternity and child support against Crawford, Morris moved to compel Crawford's DNA blood testing. Following a hearing on the motion, the trial court entered an order requiring Crawford to "submit to D.N.A. testing through North Broward Medical Center and GeneScreen, Inc. within 30 days."
Thereafter, Crawford filed a "Notice of Filing" test results from the paternity testing of the parties. The results from GeneScreen indicated that "[t]he alleged father, MICHAEL *355 CRAWFORD, is excluded as the biological father of the child, COURTNEY CRAWFORD, because he lacks the genetic markers that must be contributed to the child by the biological father."
Following the GeneScreen test results, Morris filed a verified motion for additional testing, requesting the court to enter an order for additional HLA or DNA testing to be conducted by an independent laboratory at her expense, pursuant to section 742.12(2), Florida Statutes. As grounds for entry of such order, Morris alleged that she had not engaged in sexual intercourse with anyone other than Crawford and would provide sworn testimony to that effect. In addition, pursuant to section 742.12(2), Morris timely filed her notice of objections to the initial test results.
Morris filed a notice of taking Crawford's deposition. Crawford moved for protective order, which the trial court granted, on the grounds that Crawford should not be required to submit to a deposition since the DNA test determined that he was not the father of Morris' minor child. Crawford also moved for summary judgment based on the DNA test results finding that he was not the biological father. Morris moved for rehearing on the protective order, alleging that Crawford's deposition was necessary in order to prepare for a hearing on her verified motion for additional testing, which motion was denied.
In response to the motion for summary judgment, Morris filed an affidavit in opposition, maintaining that she did not engage in sexual intercourse with anyone other than Crawford prior to the time she became pregnant.
At the hearing on the motion for summary judgment, Morris objected to the entry of summary judgment prior to her request for additional testing being heard. Notwithstanding her objection, the trial court sua sponte converted the summary judgment motion to a motion to dismiss under section 742.12 and dismissed the action with prejudice. While the trial court stated that it considered Morris' affidavits, it specifically explained its reasoning for dismissing the action as follows: "I'm ruling that there is no material issue of fact with regard to the scientific testing that was asked for, done and came in within a degree much greater than any affidavit."
The main thrust of Morris' argument is two-fold: (1) that Crawford failed to establish a proper predicate in order for the DNA test results to be admissible and (2) upon Morris' timely objection to said test results, and upon her request for additional testing, the trial court should not have dismissed the case with prejudice.
Section 742.12, Florida Statutes (1995), relied upon by the court in dismissing the cause, states in pertinent part:
(2) The test results, together with the opinions and conclusions of the test laboratory, shall be filed with the court. Any objection to the test results must be made in writing and must be filed with the court at least 10 days prior to the hearing. If no objection is filed, the test results shall be admitted into evidence without the need for predicate to be laid or third-party foundation testimony to be presented ...
(3) Test results are admissible in evidence and should be weighed along with other evidence of the paternity of the alleged father unless the statistical probability of paternity equals or exceeds 95 percent. A statistical probability of paternity of 95 percent or more creates a rebuttable presumption, as defined by s. 90.304, that the alleged father is the biological father of the child. If a party fails to rebut the presumption of paternity which arose from the statistical probability of paternity of 95 percent or more, the court may enter a summary judgment of paternity. If the test results show the alleged father cannot be the biological father, the case shall be dismissed with prejudice.
(4) Subject to the limitations in subsection (2), if the test results ... [are] disputed, the court, upon reasonable request of a party shall order that an additional test be made by the same laboratory or an independent laboratory at the expense of the party requesting the additional testing.
(5) Verified documentation of the chain of custody of the blood or other specimens is *356 competent evidence to establish the chain of custody.

Proper predicate for admissibility
Morris argues that the trial court erred in dismissing the cause by overlooking specific evidentiary requirements regarding the admission of the paternity test results. As discussed below, before the trial court could rely upon the language from section 742.12(3) which states, "[i]f the test results show the alleged father cannot be the biological father, the case shall be dismissed with prejudice," a proper predicate needed to be laid in order to admit the results of the paternity test. See §§ 742.12(2) and (5), Fla. Stat. (1995).
Subsections (2)[1] and (5) of 742.12 make it clear that upon timely objection to paternity test results, the paternity test results shall be admitted upon a proper predicate being laid or upon third-party foundation testimony being presented.
Crawford incorrectly argues that in accordance with subsection 742.12(3), if the test results show that the putative father cannot be the biological father, then the case shall be dismissed with prejudice, and the court need not look towards any evidence outside the four corners of the complaint. Alternatively, he claims that the affidavit of the director of GeneScreen was sufficient to lay a proper predicate. We disagree.
In Dutilly v. Department of Health & Rehabilitative Services, 450 So.2d 1195 (Fla. 5th DCA 1984), the defendant/putative father appealed from summary judgment entered in favor of the plaintiff/mother in a contested paternity action. In reversing, the Fifth District held that the plaintiff could have properly presented the blood test results by either (1) submitting the affidavit of the technician who actually performed the tests or (2) by submitting the affidavit of the custodian of the blood test report, thereby establishing the foundation by which the report itself could be admissible under section 90.803(6), Florida Statutes, the business records exception to the hearsay rule. See id. at 1196.
In Dutilly, the plaintiff's only efforts to establish the admissibility of the results were her counsel's affidavit that the report was a "true and correct copy of the HLA[2] blood test furnished to [him] by Biomedical Reference Laboratories, Inc.," and the following notation on the report with the notarized signatures of two people referred to as "Ph.D. Associate Director" and "Ph.D. Director Department of Paternity Evaluation":
I certify that the above testing was conducted in accordance with the standards of the American Association for Clinical Histocompatibility Testing and the American Association of Blood Banks and that the conclusions were determined independently by the undersigned and are correct as reported.
Id. at 1197.
In finding that the paternity report fell short of the requirements of section 90.803(6), the Fifth District reasoned that:
Neither the notation nor the affidavit reflects, as 90.803(6) requires, that the results were compiled in the course of regularly conducted activity, by someone or from information transmitted by someone with knowledge, that the practice of the "business" activity was to keep such records and that the opinion of paternity contained in the report would be admissible under sections 90.701-90.705. Thus, the plaintiff failed to properly submit the test results to the trial court, and they should not have been considered for purposes of the summary judgment motion. Without those results, the summary judgment was clearly improper because the defendant's denial in the face of the plaintiff's assertion of paternity amounts to a genuine issue of material fact. Even if the results had been properly admitted, we would question the entry of summary judgment in light of the defendant's sworn denial of paternity, *357 even though the equivocal nature of that denial in the instant case would raise a close question.
Id.; see also Department of Health and Rehabilitative Servs. v. Moore, 603 So.2d 13, 14 (Fla. 5th DCA 1992) (citing Seiler v. Stringham, 567 So.2d 1078 (Fla. 4th DCA 1990)) (paternity evaluation reports were not admissible in paternity suit where no predicate had been laid for admission of the reports. "Such test results cannot simply be handed to the trier of fact as evidence without proper authentication and the proper predicate.").
Similarly, in Ferguson v. Williams, 566 So.2d 9 (Fla. 3d DCA 1990), a putative father contested the granting of summary judgment in favor of the plaintiff/mother on the basis that HLA test results allegedly revealed a greater than 99% probability that the defendant was the father of plaintiff's children. While the putative father stipulated to the admission of the HLA test, the stipulation was silent as to the authentication of such documents. Many problems existed with the authentication of the paternity report, including the fact that the record on appeal contained a photocopy, that it was impossible to decipher the signatures of the persons who certified that the testing was done "in accordance with medically accepted procedures," and that the "conclusions are correct as reported."
In finding that a proper predicate had not been laid, the court held that while section 742.12 creates a statutory presumption, it does not supercede the rules governing the admissibility of business records. See id. at 11. The court relied upon Dutilly and held that:
Although [paternity] test results may be admitted into evidence pursuant to section 742.12, the records reflecting those results must be properly authenticated and a proper predicate must be laid. Haphazard admission of paternity reports such as the ones in this case does a disservice to the parties, the children, and the legal process.
Id.
Likewise, this court, in Seiler v. Stringham, 567 So.2d 1078 (Fla. 4th DCA 1990), relied upon Dutilly and Ferguson in reversing an order establishing paternity. In Seiler, we held that although paternity test results are admissible under section 742.12, they must be properly authenticated and a proper predicate laid first.
In this case, the trial court admitted the paternity test over Morris' objection as to its authenticity. Morris timely objected to the test results and objected to the admission of the results at the hearing claiming that a proper predicate had not been laid in accordance with section 742.12, the evidence code, and established case law. In particular, Morris contended that the affidavit of the laboratory director from GeneScreen, notarized in Ohio, did not comply with the requirements set forth in Dutilly and its progeny. The GeneScreen affidavit of Associate Director, David Taylor, states as follows:
The undersigned states under oath: "As a Laboratory Director of GeneScreen, I have personal knowledge of the foregoing report; that the testing was conducted in accordance with GeneScreen's standard protocol; and that the facts and conclusions stated in this report are true and correct."
Under Dutilly, we hold that the GeneScreen affidavit does not comply with the requirements set forth under section 90.803(6), Florida Statutes, which requires "that the results were compiled in the course of regularly conducted activity, by someone or from information transmitted by someone with knowledge, that the practice of the `business' activity was to keep such records and that the opinion of paternity contained in the report would be admissible under sections 90.701-90.705." See Dutilly, 450 So.2d at 1197.

Request for additional test
Morris next argues that the trial court should not have dismissed her cause with prejudice where she timely filed her objection to the test results and requested additional testing. In addition, Morris claims that the trial court erred in failing to rule on her pending motion for additional testing prior to dismissing the action. Crawford suggests that Morris abandoned her request because she failed to notice her motion for a *358 hearing. While Morris concedes that her counsel failed to set the motion for hearing, she argues that additional time was needed to gather evidence sufficient to convince the trial court of the necessity of a second test. Notwithstanding this failure, the trial court was still presented with a pending motion and "a reasonable request" for an additional test in accordance with section 742.12. However, the trial court never ruled on Morris' motion for additional testing.
Section 742.12(4) provides in relevant part that:
Subject to the limitations in subsection (2), if the test results ... [are] disputed, the court, upon reasonable request of a party, shall order that an additional test be made by the same laboratory or an independent laboratory at the expense of the party requesting additional testing.
(Emphasis added).
In Vidal v. Rivas, 556 So.2d 1150 (Fla. 3d DCA 1990), the Third District construed the above provision and in particular, a determination of what is a "reasonable" request for a retest and the effect of the use of the word "shall." The court determined that "shall" should be considered directory rather than mandatory.
"Shall" as used in the statute in question must be considered as being directory, because to construe it as mandatory would render meaningless the words immediately proceeding it, to wit: "reasonable request." "Request" by its very definition indicates that it is not a mandatory command, but what is requested is addressed to the discretion of the recipient. We construe the use of "shall" in the statute as directory and next look to determine if the trial judge acted reasonably under all the circumstances, or to state it differently, whether the trial judge abused his discretion in denying an additional test.
Id. at 1151-1152. Recently, the Third District reiterated that subsection 742.12(4) authorizes additional testing where there is a showing of good cause under the criteria set forth in the statute. See State Dep't of Revenue, Child Support Enforcement on Behalf of Vasquez v. Aguirre, 705 So.2d 990, 994 (Fla. 3d DCA), review denied, 717 So.2d 527 (Fla.1998). If, based on the circumstances of the case, there is good cause to order more than one additional test, the trial court has the power to do so. See id.
Under the facts of this case, we hold that good cause was presented for additional testing and that a reasonable request was pending before the court. We find that the trial court abused its discretion by failing to rule on Morris' motion for additional testing and by circumventing subsection 742.12(4) in its entirety prior to its entry of dismissal of the action.
Since the trial court erred in admitting the DNA test results without a proper predicate being established for their admission, and further erred by failing to order additional testing after the statutory "reasonable request," we reverse and remand with directions for the reinstatement of Morris' cause of action and to grant the motion for paternity testing by an independent laboratory. Based on the above reasons for reversal, we decline to address any other issues raised in this appeal.
REVERSED AND REMANDED.
KLEIN and GROSS, JJ., concur.
NOTES
[1] Section 742.12, Florida Statutes, was amended in 1994, adding language in subsection (2) requiring that an objection be made in writing and filed with the court 10 days prior to the hearing and if no objection is filed, the test results shall be admitted without the need for predicate to be laid or third-party foundation testimony to be presented.
[2] "HLA" is a Human Leukocyte Antigen test. In this case, the parties submitted to DNA tests.